IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LEONARD WAYNE KITT,          §
TDCJ NO. 655955,             §
                             §
          Plaintiff,         §
                             §        CIVIL ACTION NO. H-14-0368
v.                           §
                             §
TRACY H. BAILEY, et al.,     §
                             §
          Defendants.        §


MEMORANDUM OPINION AND ORDER


Plaintiff Leonard Wayne Kitt (TDCJ No. 655955) has filed a
Complaint Under the Civil Rights Act, 42 U.S.C. § 1983 (Docket
Entry No. 1), alleging that his civil rights were violated while he
was in custody at the Texas Department of Criminal Justice -
Correctional Institutions Division ("TDCJ"). Kitt's only remaining
claim is that Lieutenant Billy McCreary used excessive force
against him by spraying him unnecessarily with a chemical agent.
Pending before the court is Defendant McCreary's Motion for Summary
Judgment with Brief in Support ("Defendant's MSJ") (Docket Entry
No. 66). Kitt has filed Plaintiff's Memorandum in Response to
Defendant's Motion for Summary Judgment/His Request Questioning the
Sufficiency of the Evidence Fed. R. Civil P. 52(5) and Affidavit in
Support (Docket Entry No. 70, p. 3), and McCreary has filed
Defendant McCreary's Reply to Plaintiff's Response to Defendant's

Motion for Summary Judgment ("Defendant's Reply") (Docket Entry No. 71). After considering all of the pleadings, the exhibits, and the applicable law, the court will grant the Defendant's MSJ and will dismiss this case for the reasons explained below.

## I.  Background

The facts underlying the claims in this case have been set forth at length in the court's Memorandum Opinion and Order entered on April 10, 2015, and will not be repeated in full. (See Docket Entry No. 64.) What follows is a summary of Kitt's allegations pertaining to his sole remaining claim against McCreary for the excessive use of force.

## A.  Kitt's Allegations

This case stems from a use of force that occurred at the Estelle Unit on October 30, 2013. Kitt alleges that he was waiting in line with other inmates for his turn to take a shower when an officer (Captain Vincent) approached him and told him he was out of place. (Docket Entry No. 7, p. 16) When Kitt insisted he had a right to take a shower because he worked in the kitchen, Captain Vincent moved him to a shower cell on the A-line while he verified Kitt's story. Approximately fifteen minutes later, Captain Vincent ordered Kitt's release after confirming that Kitt was a kitchen worker who was authorized to take a shower. Id.

Captain Vincent's order to release Kitt to take a shower was conveyed to Officer David W. Allmon who in turn informed Officer Kristy Cooper that Kitt should be released. (Docket Entry No. 16, p. 16) Kitt alleges that instead of releasing him, Cooper went into the stall where Kitt was being held and ordered him to submit to handcuffs or suffer the consequences. Id. Kitt, believing he had done nothing wrong, refused to comply and protested that he was supposed to be released. When Kitt refused repeated orders to comply, Cooper summoned Lt. McCreary, who arrived wearing a gas mask and carrying a large cannister of gas. Id.

Kitt alleges that Lt. McCreary shouted something at him that he could not understand because McCreary was wearing the gas mask. Id. at 17. Kitt states that he did not want to have his hands cuffed because guards routinely assault inmates in small shower stalls like the one in which he was confined. Id. When Kitt refused to submit McCreary allegedly sprayed his face, head, and body with gas although Kitt made no threatening moves, gestures, or statements. (Docket Entry No. 7, p. 17) Kitt alleges that Lt. McCreary continued to spray him well after he collapsed and showed no resistance and made no movement other than to shield himself from the gas. Id. at 15, 17.

Kitt alleges that a video record of the incident substantiates his allegation that Lt. McCreary took no reasonable steps to lessen his use of force after it was apparent that Kitt was incapacitated. Id. at 17. He also states that the video record will show that he

-3-

did not do anything that could be interpreted as a threat. Id. Kitt complains that he suffered skin, nose, throat, and sinus irritations and burns as a result of the gas attack. Id. at 18. He also states that he experienced coughing, nasal drip, tightness in the chest, and difficulty breathing. Id. Kitt alleges that he suffered a heart attack approximately three or four weeks before the incident and that a stint was implanted in his right coronary artery. Id. He states that he now takes atorvastatin (Lipitor), nitroglycerin, clopiddogrel (Plavix), and aspirin for his heart. Id. He also states that he has been treated for Hodgkins lymphoma. Kitt claims that his medical restrictions clearly prohibit exposure to environmental pollutants, including chemicals and irritants. Id. For these reasons, Kitt contends that the force used was excessive in violation of the Eighth Amendment.

**B.   Defendant McCreary's Motion for Summary Judgment**

McCreary now moves for summary judgment, arguing that Kitt cannot demonstrate a constitutional violation of the Eighth Amendment and that he is entitled to qualified immunity from suit. In support of that motion McCreary provides a copy of the TDCJ Use of Force Report concerning the incident that occurred on October 30, 2013. (Docket Entry No. 66-1, Exhibit A) According to the report, which contains statements from McCreary and other officers who were present at the time of the incident, McCreary encountered Kitt in the A-line shower where Kitt was refusing to

-4-

submit to a strip search and the application of hand restraints for purposes of a cell move.  Id. at 14.  McCreary issued two orders for Kitt to submit to a strip search and the application of hand restraints or chemical agents would be utilized.  Id.  When Kitt refused to comply McCreary administered a short burst of chemical agent into the shower "in an attempt to gain compliance."  Id. Kitt immediately turned around and placed his hands into the food tray slot to be handcuffed.  Id.  A nurse who examined Kitt after the use of force noted no injuries.  Id. at 25.

TDCJ officials conducting an Administrative Review of the incident concluded that the use of force was "justified."  Id. at 5, 6.  In particular, a TDCJ Regional Coordinator observed that Kitt refused to comply with all orders and that authorization was given for the use of chemical agents, which were used "to gain compliance."  Id. at 5.  A procedural violation was noted and McCreary received a Letter of Training because he failed to instruct Kitt on decontamination procedures following the use of force.  Id. at 6, 8.  The use of force was found to comply with prison policies and procedures in all other respects.  Id. at 5, 6.

In addition to the Use of Force Report, McCreary provides a digital video (DVD) depicting the use of force that occurred on October 30, 2013.  (Docket Entry No. 69)  The video refutes Kitt's claim that McCreary sprayed him with gas in the face and continued to spray him after he collapsed on the ground or was otherwise

-5-

incapacitated.  The video begins by showing McCreary preparing to go to the A-line shower area because Kitt had refused to obey orders to submit to a strip search and hand restraints for purposes of a cell move.  McCreary explains that it was his intention to give two orders directing Kitt to submit to a strip search and hand restraints or chemical agents would be utilized.  The video next shows McCreary and two other officers wearing gas masks standing in front of the shower.  McCreary, who is also wearing a gas mask, is then heard giving two orders in rapid succession.  The orders are garbled because of the gas mask that McCreary is wearing, but he clearly warns Kitt to comply or "chemical agents will be utilized." When Kitt failed to comply, McCreary sprayed Kitt with a short burst (no more than five seconds) of chemical agent.  The chemical spray hit Kitt in the upper torso, primarily in the back area. Kitt immediately placed his hands through the food tray slot of the cell to be handcuffed.  Kitt promptly removed his clothing and submitted to an abbreviated strip search.  He was then placed in hand restraints and was escorted to his cell.  Shortly afterward, medical personnel arrived to examine Kitt, who was complaining of chest pain and shortness of breath.  When Kitt was unable to walk to the infirmary, guards carried him on a backboard and then a gurney.  Kitt arrived at the infirmary moments later and the video ends as he is being examined by medical personnel.

McCreary also supplies Kitt's medical records under seal. (Docket Entry No. 67)  The records reflect that Kitt arrived at the

Estelle Unit infirmary following the use of force in "stable" condition, complaining of chest pain and difficulty breathing.  <u>Id.</u> at 60, 62, 73.  Medical providers noted that Kitt had a history of "cardiac problems," including a heart attack on September 3, 2013. <u>Id.</u> at 60, 73.  Kitt denied having any physical injury and no injuries were visually noted.  <u>Id.</u> at 62.  Kitt's blood pressure initially was 151/82, but within fifteen minutes it had lowered to 139/79.  <u>Id.</u>  An EKG was done and oxygen was administered.  <u>Id.</u> Kitt's heart rate decreased and within thirty minutes of arriving at the infirmary he was released to return to his cell.  <u>Id.</u>  The medical records disclose that no further treatment was required following the use of force.

Kitt's medical records contain a "Health Summary for Classification" form, which shows that in October of 2013 Kitt was restricted from exposure to "environment[al] pollutants" and "chemicals or irritants" in the work setting.  (Docket Entry No. 67-1, p. 80)  Contrary to Kitt's contention, the form shows that officials were not required to contact the medical department before instituting disciplinary measures against Kitt.  <u>Id.</u> Likewise, Kitt had no restrictions for disciplinary actions and nothing that would otherwise prohibit the use of a chemical agent for disciplinary purposes.  <u>Id.</u>

## II.  <u>Standard of Review</u>

Defendant's MSJ is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under this rule a reviewing court "shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. <u>Anderson v. Liberty</u> <u>Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. <u>Id.</u>

In deciding a summary judgment motion the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." <u>Dillon v. Rogers</u>, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." <u>Jones v. Lowndes County, Mississippi</u>, 678 F.3d 344, 348 (5th Cir. 2012) (quoting <u>TIG Ins. Co. v. Sedgwick James of</u> <u>Washington</u>, 276 F.3d 754, 759 (5th Cir. 2002)); <u>see also</u> <u>Little v.</u> <u>Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the

-8-

non-movant to provide "specific facts showing the existence of a genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 106 S. Ct. 1348, 1356 (1986).

The plaintiff proceeds <u>pro</u> <u>se</u> in this case. Courts construe pleadings filed by <u>pro</u> <u>se</u> litigants under a less stringent standard than those drafted by lawyers. <u>See</u> <u>Haines v. Kerner</u>, 92 S. Ct. 594, 596 (1972); <u>see also</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) ("A document filed <u>pro</u> <u>se</u> is 'to be liberally construed[.]'") (quotation omitted). Nevertheless, "<u>pro</u> <u>se</u> parties must still brief the issues and reasonably comply with [federal procedural rules]." <u>Grant v. Cuellar</u>, 59 F.3d 523, 524 (5th Cir. 1995). The Fifth Circuit has held that "the notice afforded by the Rules of Civil Procedure and the local rules" is "sufficient" to advise a <u>pro</u> <u>se</u> party of his burden in opposing a summary judgment motion. <u>See</u> <u>Martin v. Harrison County Jail</u>, 975 F.2d 192, 193 (5th Cir. 1992).

## III.  <u>Discussion</u>

Defendant McCreary argues that Kitt fails to show that he used excessive force in a malicious or sadistic manner for the purpose of inflicting pain in violation of the Eighth Amendment. McCreary argues further that Kitt fails to establish a constitutional violation or to show that McCreary's actions were objectively unreasonable. McCreary maintains, therefore, that he is entitled to qualified immunity.

## A.    Qualified Immunity

Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity.  See Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982).  "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015) (quoting Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012)). In doing so, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."  Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011).  Thus, the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Id. (quoting Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986)).

To determine whether a public official is entitled to qualified immunity for an alleged constitutional violation review-ing courts engage in a two-step inquiry.  See Pearson v. Callahan, 129 S. Ct. 808, 815 (2009).  The first step of the analysis asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right that was "clearly established" at that time.  Id. at 815-16.  The second step of the analysis asks whether qualified immunity is appropriate, notwithstanding an

alleged violation, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." <u>Hampton Co. Nat'l Surety, L.L.C. v. Tunica County, Mississippi</u>, 543 F.3d 221, 225 (5th Cir. 2008) (quoting <u>Freeman v. Gore</u>, 483 F.3d 404, 410-11 (5th Cir. 2007)). A reviewing court may consider these steps in any sequence. <u>See</u> <u>Pearson</u>, 129 S. Ct. at 818; <u>see also</u> <u>Tolan v. Cotton</u>, 134 S. Ct. 1861, 1866 (2014). In this case the court begins by examining whether the plaintiff establishes a constitutional violation of the Eighth Amendment to the United States Constitution.

## B.   Eighth Amendment Excessive Use of Force

Claims of excessive use of force in the prison context are governed by the Eighth Amendment, which prohibits cruel and unusual punishment, i.e., the "unnecessary and wanton infliction of pain." <u>Wilson v. Seiter</u>, 111 S. Ct. 2321 (1991) (citation and internal quotation marks omitted). Not every malevolent touch by a prison guard gives rise to a constitutional violation under the Eighth Amendment. <u>See</u> <u>Hudson v. McMillian</u>, 112 S. Ct. 995, 1000 (1992) (citing <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")). The constitution excludes from recognition <u>de minimis</u> uses of physical force, provided that the use of force is not of a

sort "'repugnant to the conscience of mankind.'" Hudson, 112 S. Ct. at 1000 (citation and quotation omitted).

To prevail on an excessive-use-of-force claim under the Eighth Amendment, a plaintiff must establish that force was not "applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm." Eason v. Holt, 73 F.3d 600, 601-02 (5th Cir. 1996) (citing Hudson, 112 S. Ct. at 998; and Jackson v. Culbertson, 984 F.2d 699 (5th Cir. 1993)).  Relevant factors to consider in evaluating an excessive-use-of-force claim include:  (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response.  See Hudson, 112 S. Ct. at 999; Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir. 1999).  Each of these factors is considered briefly below.

### 1.  Extent of Injury

Kitt sustained no physical injuries as a result of the use of force, but complained of chest pain and shortness of breath due to the chemical spray.  The medical records reflect that he arrived at the infirmary in "stable" condition and that his blood pressure was elevated.  (Docket Entry No. 67, pp. 60, 62)  However, his heart rate soon decreased, returning to normal, and he was released from the infirmary after approximately thirty minutes.  Id. at 62.

-12-

While arguably more than de minimis,[1] Kitt's discomfort was not significant for purposes of the Eighth Amendment and does not demonstrate that excessive force was deployed in this instance.

### 2.   Need for Force

McCreary argues that the application of force was needed in this case because Kitt refused repeated orders to submit to a strip search and hand restraints so that he could be moved to another cell.   Kitt admits that force was used only after he "would not submit to being handcuffed."   (Docket Entry No. 7, p. 17; Docket Entry No. 21, p. 7)   Use of a chemical agent in limited quantities to gain compliance is considered an appropriate response where an inmate refuses to obey repeated orders.   See Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984) ("If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force.").

Kitt argues that force was not needed because his refusal to obey the orders given by Officer Cooper was legitimate.   This argument is without merit.   Preserving institutional order and

---

[1]The Prison Litigation Reform Act ("PLRA") precludes recovery of monetary damages for "mental or emotional injury suffered while in custody without a prior showing of physical injury."   42 U.S.C. § 1997e(e).   To be actionable an inmate's injury need not be significant, but must be more than de minimis.   See Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997) (holding that a sore, bruised ear lasting for three days was de minimis and did not meet the physical injury requirement found in the PLRA).

discipline is a central objective of sound prison administration. See Bell v. Wolfish, 99 S. Ct. 1861, 1878 (1979) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."). As an inmate confined in a high security prison facility, Kitt did not have the right to decide whether to obey the orders he was given. See Minix v. Blevins, Civil Action No. 6:06-306, 2007 WL 1217883, at *24 (E.D. Tex. April 23, 2007) (citing Meadows v. Gibson, 855 F. Supp. 223, 225 (W.D. Tenn. 1994) (prisoners cannot pick and choose which prison rules to obey)); see also Soto, 744 F.2d at 1267 ("Inmates cannot be permitted to decide which orders they will obey, and when they will obey them."). Based on this record Kitt fails to show that the use of force was unnecessary.

3.  Need for Force and the Amount of Force Used

Kitt claims that the amount of force was excessive because McCreary continued to spray him with chemical agent well after he had collapsed to the floor and was incapacitated. (Docket Entry No. 7, p. 17; Docket Entry No. 70, pp. 17, 20, 21) Kitt's assertion is refuted by the video, which confirms that McCreary administered only a short burst of chemical spray to Kitt's upper back, lasting no more than five seconds. (Docket Entry No. 69) The video further confirms that Kitt did not collapse or fall to

-14-

the ground at any time while the chemical agent was being administered. The video shows that McCreary did not continue to spray Kitt after he became incapacitated, as Kitt contends.

Noting that he had suffered a heart attack in early September of 2013, Kitt argues further that the amount of force was excessive because his medical restrictions prohibited his exposure to chemicals. (Docket Entry No. 70, p. 15)  This contention is refuted by Kitt's Health Summary for Classification form in place for October of 2013 when the use of force occurred. (Docket Entry No. 67-1, p. 80)  That form shows that Kitt was restricted from exposure to chemicals in the work setting, but that officials were not required to contact the medical department before instituting disciplinary measures and that he had no restrictions for disciplinary purposes. Id.  The record does not contain evidence that the amount of force used was unauthorized or excessive to the need.

### 4.   Reasonably Perceived Threat

The fourth factor looks at the threat reasonably perceived by the responsible official, which in this case was Lt. McCreary. The video shows that McCreary was aware that Kitt had refused repeated orders to be handcuffed so that he could be moved to another cell. When McCreary approached Kitt's cell wearing a gas mask and armed with chemical spray, Kitt did not comply with orders to submit to a strip search and hand restraints.  Kitt argues that force was not

necessary because he was secured in a cell and did not pose any threat.  Acknowledging that Kitt did not pose a physical threat, per se, McCreary contends that Kitt's actions posed a threat to the order and security of the institution.

Kitt correctly notes that his case is distinguishable from those involving an uprising or disturbance by inmates.  In that context, it is well established that the use of tear gas to prevent riots or escapes or to subdue recalcitrant prisoners does not constitute cruel and unusual punishment.  See Clemmons v. Greggs, 509 F.2d 1338, 1340 (5th Cir. 1975); see also Baldwin v. Stalder, 137 F.3d 836, 841 (5th Cir. 1998) (holding that the use of mace to quell a disturbance on a prison bus was not an excessive use of force).

While Kitt's recalcitrance did not rise to the level of creating a disturbance, Kitt does not dispute that his misconduct frustrated efforts by correctional officers to move him to another cell.  Although Kitt's actions did not pose a physical threat, per se, courts have recognized that disobeying orders poses a threat to the order and security of the prison as an institution. See Minix v. Blevins, Civil Action No. 6:06-306, 2007 WL 1217883, at *25 (E.D. Tex. April 23, 2007) (citing Soto v. Dickey, 744 F.2d 1260, 1270-71 (7th Cir. 1984)).  The fact that Kitt was secured in his cell is of no moment.  In that respect, "the use of mace on an unruly or 'recalcitrant' prison inmate, though confined in his

-16-

cell, is not plainly <u>per se</u> unconstitutional" as cruel and unusual punishment. <u>Bailey v. Turner</u>, 736 F.2d 963, 970 (4th Cir. 1984); <u>see also</u> <u>Soto</u>, 744 F.2d at 1270 ("The Supreme Court has never held, nor have we or any other court of appeals, so far as we can determine, that the use of tear gas or a chemical agent is a per se violation of the Eighth Amendment, whether an inmate is locked in his cell or not."); <u>Rios v. McBain</u>, Civil No. A504CV84, 2005 WL 1026192, at *7 (E.D. Tex. April 28, 2005) (noting that "open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the defiance is emanating from within a locked cell").

Kitt has not refuted McCreary's contention that his actions were reasonably perceived as a threat to institutional order and security. Therefore, this factor does not weigh in favor of finding that excessive force was used in this instance.

5.   <u>Efforts to Temper the Forceful Response</u>

The fifth factor asks the court to determine if any efforts were made to temper the severity of the forceful response. Kitt admits that he refused to obey repeated orders to submit to hand restraints and that he was warned of the consequences, i.e, that chemical agents would be utilized if he did not comply. After Kitt refused to comply with repeated orders, Lt. McCreary assembled a team of officers, including a video camera, to execute a use of force pursuant to the TDCJ Use of Force Plan. Lt. McCreary clearly

-17-

warned Kitt that he was about to use a chemical agent if he did not submit. The use of chemical spray was short in duration, lasting no more than five seconds. If officers had not used a chemical agent, it is likely that physical force would have been used to extract Kitt from his cell, risking physical injury to staff and to Kitt. Had Kitt complied at any point with the orders to submit to hand restraints, the use of force would not have been necessary. Under these circumstances, steps were plainly taken to eliminate or reduce the need for force.

A review of the five above-referenced factors from <u>Hudson v. McMillian</u> shows that McCreary applied limited force after he reasonably perceived that Kitt had disobeyed repeated orders and that he did so in a good faith effort to maintain or restore discipline and not maliciously or sadistically to inflict pain or to use force in excess of the need. Consideration of these same factors supports a finding that McCreary's actions were objectively reasonable in light of clearly established law found in <u>Hudson</u>. Kitt does not otherwise point to admissible evidence showing that McCreary violated the Eighth Amendment by using excessive force in a manner that was cruel and unusual. Under these circumstances, Kitt has not established a constitutional violation of the Eighth Amendment or overcome McCreary's entitlement to qualified immunity. Absent a genuine issue of material fact for trial, Defendant's MSJ will be granted.

### IV.   <u>Conclusion and Order</u>

Accordingly, it is **ORDERED** that Defendant McCreary's Motion for Summary Judgment (Docket Entry No. 66) is **GRANTED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 24th day of June, 2015.

_____
                  SIM LAKE
UNITED STATES DISTRICT JUDGE